IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

YOUNG JAE CHOI,

                Plaintiff,                          OPINION AND ORDER

v.

                                                           20-cv-953-wmc

SARAH RUSTAD,

                Defendant.

---

*Pro se* plaintiff Young Jae Choi, who currently is being held at the Mendota Mental Health Institute ("Mendota"), filed this lawsuit under 42 U.S.C. § 1983. Choi claims that one defendant, Dr. Sarah Rustad, violated his constitutional rights in her handling of the insomnia he experienced after taking an anti-psychotic medication. In a previous order, the court explained that plaintiff's allegations did not support a constitutional claim against Rustad because (1) plaintiff had not alleged facts sufficient to support an inference that his insomnia was a serious medical condition, and (2) plaintiff had not alleged that Rustad was aware of, and consciously disregarded, the difficulties Choi experienced while he was taking the prescribed medication. (1/18/22 Op. & Order (dkt. #8) 3-4.) The court gave Choi the opportunity to amend his complaint to provide more details about his symptoms and interactions with Dr. Rustad. Choi timely amended his complaint, which the court has screened as required by 28 U.S.C. § 1915(e)(2). Unfortunately, since Choi's allegations still fail to support a constitutional claim against Dr. Rustad, the court is now dismissing this case for failure to state a claim upon which relief can be granted.

OPINION[1]

Choi alleges that in February of 2019, he was under the care of non-defendant psychiatrist Dr. Genheimer, who retired. Before retiring, Dr. Genheimer prescribed Choi the anti-psychotic drug Abilify, which Choi did not receive until Dr. Rustad took over Choi's care, on February 14, 2019. Choi alleges that Dr. Rustad did not meet with Choi to discuss that medication.

Choi alleges that the first night he took Abilify, he had a lot of energy and for the first week on that medication, he fell asleep much later in the night. Choi claims he complained to a staff member about his sleep issues, but nothing was done, and instead the medication dose increased. Choi alleges that his sleep decreased to five hours a night, and that although he was losing sleep, he felt caffeinated and restless nonstop.

Choi met with Dr. Rustad at some point within the first month of starting Abilify, but he does not allege the date. He reported his sleep issues, and Dr. Rustad responded that the medication needed time to work, and further prescribed the sleep aid hydroxyzine, as requested. Dr. Rustad also increased the Abilify dose.

Choi alleges that after this point his sleep decreased to three to four hours a night. He alleged that he tried hydroxyzine once or twice, but he says that medication was ineffective, so he stopped asking for it. After being on Abilify for one month, he was sleeping at most two hours per night. At that point, Choi met with Dr. Rustad again and

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

told her the medication was still a problem. Therefore, Dr. Rustad told Choi she wanted him to try Olanzapine, also an antipsychotic. Choi's Abilify prescription therefore was terminated on March 14, 2019.

Shortly after that interaction, Choi met with a doctor for his treatment and insomnia. Choi was diagnosed with "Unspecified Insomnia Disorder," because he was sleeping only four hours a night consecutively. He was prescribed hydroxyzine again, and further advised to stay on that medication so that it could have a positive effect. Choi stayed on that medication for almost a year and stopped take it once his sleep improved. Choi alleges that he consistently wakes up at 3:00 or 4:00 a.m. and sometimes has difficulty falling back to sleep.

To state an Eighth Amendment claim related to medical health care, a plaintiff must allege facts supporting an inference that his treatment demonstrates (1) "deliberate indifference" to a (2) "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Choi's allegations fail at each element.

As an initial matter, during the one-month period he was taking Abilify, it does not appear that Choi went even one full night without sleep, so even assuming that he suffered from insomnia, his allegations do not suggest that the condition was severe or long-lasting. More importantly, like his original complaint, Choi has not alleged facts suggesting that his insomnia presented a serious medical need, since he has not detailed any symptoms beyond the discomfort of exhaustion and jitteriness. *See Collins v. LeBlanc*, No. 11-0077-JJB, 2012 WL 528172, at *4 (M.D. La. Jan. 19, 2012) (as a general proposition, loss of sleep does not constitute a condition serious enough to support a deliberate indifference

3

claim); *Smith v. Crose*, No. 06-3168 (FSH), 2006 WL 2591075, at *5 (D. N.J. Sept. 8, 2006) (a plaintiff's insomnia and "reduced ability to fall asleep does not amount to a serious medical need"). Instead, Choi describes his symptoms as feeling caffeinated and restless, which may have been uncomfortable, but does not suggest that he was in such severe pain that he required medical intervention. *See Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997) (medical need is serious if it is life-threatening, results in needless pain and suffering or significantly affects an individual's daily activities). Therefore, Choi's claim against Rustad fails at the first element.

Yet even assuming that Choi was experiencing a serious medical need because of his insomnia, his more robust allegations related to Dr. Rustad's treatment decisions do not support an inference of deliberate indifference. To the contrary, as alleged, Dr. Rustad increased the Abilify dosage over time, and when Choi reported the adverse side effect, she not only advised him to try to stay on the medication to give his body a chance to adjust, but further prescribed him a sleep aid to address that side effect. Those decisions, which are entitled to significant deference, do not suggest an absence of medical judgment or that she consciously disregarded the discomfort he was experiencing from lack of sleep. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) (declining to provide desired pain medication does not suggest deliberate indifference); *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018) ("[T]reating pain allows considerable room for professional judgment."). Moreover, Choi alleges that the second time he told Dr. Rustad he did not like the effects of the medication, she changed course and advised that he try a different medication, demonstrating an appropriate exercise of her medical judgment. Therefore,

there is no room to infer that Dr. Rustad "doggedly persisted in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Finally, Choi's allegations about the care he received after he was assigned to another psychiatrist do not suggest that Dr. Rustad's decisions fell below the range of acceptable approaches to prescribing and managing psychotropic medication. In fact, he alleges that when he started taking hydroxyzine as directed, his sleep improved. For all of these reasons, Choi's allegations do not state a claim for relief against Dr. Rustad, and at this juncture the court finds dismissal of this lawsuit for that reason appropriate.

## ORDER

IT IS ORDERED that:

1. Plaintiff Young Choi's complaint is DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

2. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 2nd day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge